# United States Court of Appeals
## For the First Circuit

No. 25-1575

MOLLY COSEL,

Plaintiff, Appellee,

v.

GEOFFREY C. WENDT, as Trustee of the William G. Wendt 2022
Family Trust,

Defendant, Appellant,

WILLIAM H. WENDT; DALIA K. WENDT,

Defendants.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

———————————

Before

Aframe, Lynch, and Kayatta,
Circuit Judges.

———————————

Christopher M. Hennessey, with whom Cohen Kinne Valicenti &
Cook LLP, David H. Rich, and Todd & Weld LLP were on brief, for
appellant.
Dennis M. LaRochelle, with whom Cain Hibbard & Myers PC was
on brief, for appellee.

———————————

August 11, 2026

———————————

**AFRAME, Circuit Judge.** At its core, this diversity action is a dispute between Molly Cosel ("Molly") and her former in-laws, the Wendts, over real property located in western Massachusetts. But after several state court proceedings, that central dispute has morphed into complicated questions of state procedural and property law. Below, the district court addressed many of these legal issues to grant Molly summary judgment. In so doing, it resolved unsettled questions of Massachusetts law related to property owned by tenants by the entirety and the meaning of "necessaries" under Massachusetts General Laws, chapter 209, § 1 ("Chapter 209"). We view the district court's decision as a mixed bag. Accordingly, we affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.[1]

## I. Background

### A. Facts

The following facts are undisputed except where otherwise noted.

In 2014, Molly and William G. Wendt ("Will") married. About two years later, around the birth of Molly and Will's second child, Molly's parents divided their property and then deeded one

---

[1] This opinion addresses several complex areas of law. For a summary, see infra Part III.C.

of the subdivisions, 40A McCarthy Road, Tyringham, Massachusetts (the "Property"), to Molly and Will as tenants by the entirety.

Upon receiving the Property from Molly's parents, Molly and Will planned to develop it substantially (though Molly disputes the extent to which she participated in planning and budgeting for the developments). They sought to renovate a pre-existing structure on the Property and build a second one. Some of these projects were intended to develop a family home; others aimed at building Will a studio so that he could pursue a career in photography.

Initially, Molly and Will financed these projects with gifted funds from Will's parents, William H. and Dalia Wendt ("Bill" and "Dalia," respectively; the "Wendt Parents" together). But by November 2017, the couple had depleted those funds. Starting in February 2018, the Wendt Parents provided over $1.5 million in additional funds for the project (the "Disputed Funds").

In 2019, Molly and Will's marriage started to deteriorate. When the Wendt Parents learned about these marital problems, they memorialized the Disputed Funds as a loan in a promissory note. Will signed the note; Molly did not. Until the Disputed Funds were memorialized in the promissory note, there had been no terms attached to them -- for example, the parties had not established an interest rate on the funds or a payment timeline.

- 3 -

Nevertheless, Bill, Dalia, and the Wendt family accountant each claimed that the Disputed Funds were always intended to be a loan.

In February 2020, as marital conditions worsened, Molly temporarily moved from the Property and filed for divorce. Molly returned to the Property following the conclusion of the divorce proceedings, around October 2022.

Starting a few weeks before Molly moved from the Property, several lawsuits were filed, culminating in this action. First, on February 6, 2020, Molly filed for divorce from Will in Berkshire Probate and Family Court (the "Family Court"). Then, in November 2020, the Wendt Parents sued Will, but not Molly, in Massachusetts Superior Court to collect on the promissory note (the "Default Suit"). Will did not appear in court, speak with a lawyer, or present any defense for failing to repay the loan. So, in December 2020, the Superior Court entered a default judgment for the Wendt Parents against their son. Several weeks later, the Superior Court issued a writ of execution on the default judgment, purporting to allow the Wendt Parents to sell Will's interest in the Property in satisfaction of the loan. In due course, the Berkshire County Sheriff's Department recorded the execution at the county registry of deeds, establishing a judgment lien.

At this point, Will and Molly's divorce proceedings were ongoing. So, in June 2021, to protect their interest in the Property, the Wendt Parents filed another action in Massachusetts

- 4 -

Superior Court (the "Quiet Title Suit"). This time, they sued several parties, including Will, Molly, and some of Molly's relatives. In relevant part, the Wendt Parents sought to hold Molly jointly and severally liable for the Disputed Funds and to quiet title on the Property.

Molly and her family moved to dismiss the Quiet Title Suit. In the alternative, they sought to stay the action until the divorce proceedings concluded. As in the Default Suit, Will did not appear. The court denied the motion to dismiss the suit but stayed the case until the end of the divorce proceedings.

Still seeking to protect their interest in the Property, the Wendt Parents moved to intervene in the divorce proceedings. Molly opposed their intervention, and the Family Court denied the Wendt Parents' motion. Bill then asked to testify, though because he was in poor health, he sought to do so remotely. The Family Court denied Bill's request to testify remotely, but it permitted the Wendt Parents' accountant to testify remotely on their behalf.

In July 2022, the Family Court entered a judgment of divorce nisi (the "divorce decree"). As is relevant here, the divorce decree stated that Molly "shall retain the [Property] free and clear from any claim by [Will]" and required Will to "transfer to [Molly] a deed conveying all of his right, title and interest in and to [the Property]." The divorce decree also distributed some of the couple's liabilities. This portion of the decree

addressed the promissory note that had memorialized the alleged loan, ordering that, to the extent the note "constitute[d] a legal obligation," Will was "solely responsible" for satisfying it. Finally, the decree required Molly to pay Will $250,000 to ensure "an equitable distribution of the marital estate." The Massachusetts Appeals Court affirmed the decree in all relevant parts. In so doing, it noted that the Family Court was not "plainly wrong" in finding that the promissory note for the Disputed Funds had created a "sham obligation."

After entering the divorce decree, the Family Court clarified it in a separate order. This order explained that the court did not view the Disputed Funds as a "bona fide marital debt" because Molly was uninvolved in procuring the Disputed Funds or spending them. Nevertheless, the Family Court acknowledged that "it lacked any authority to adjudicate" Will and his parents' rights with respect to the promissory note. Based on this recognition, the Family Court explained that the divorce decree did not "vitiate either the [Wendt Parents'] default judgment or the Execution."

After the Family Court issued the divorce decree, the Wendt Parents obtained a voluntary dismissal without prejudice of the Quiet Title Suit. A few weeks later, they assigned their interest in the default judgment to the William G. Wendt 2022 Family Trust (the "Trust") and named Molly and Will's children as

beneficiaries.  They also appointed Geoffrey Wendt ("Geoffrey"), another of their sons, as trustee.  In August 2022, the Trust's attorney issued a notice of sheriff's sale stating that Will's purported "undivided one-half interest" in the Property would be sold on September 16, 2022.

B.    **Procedural History**

That brings us to this suit.  On August 19, 2022, after learning that the Sheriff intended to sell the Property, Molly, who is domiciled in Massachusetts, filed suit in Massachusetts Superior Court against the Wendt Parents.  She sought a declaratory judgment and an injunction preventing the foreclosure and sale of the Property to pay the judgment lien.  The Wendt Parents, who are domiciled in Indiana, removed the case to federal court asserting diversity jurisdiction.  See 28 U.S.C. § 1332.  Molly then amended her complaint to add Geoffrey, an Indiana domiciliary, in his capacity as Trustee of the Trust, and about two weeks later, the parties stipulated to dismiss the Wendt Parents with prejudice. The Trust answered Molly's amended complaint and asserted counterclaims seeking declaratory judgments that (1) Molly is jointly and severally liable for the Disputed Funds and (2) the Berkshire Sheriff could sell the Property at public auction.

After discovery, the parties cross-moved for summary judgment.  The district court noted that there was a dispute of fact over whether the Disputed Funds arose from a valid loan.

Cosel v. Wendt, 777 F. Supp. 3d 16, 21 (D. Mass. 2025).  So, it continued, should that dispute be material, it "would foreclose summary judgment for either party."  Id.  But the court held that this dispute was immaterial because even assuming, favorably to the Trust, that the Disputed Funds arose from a valid loan, Molly was entitled to summary judgment on all claims and counterclaims. Id. at 24-26.  The court rested its decision on two legal premises.

First, the district court interpreted Massachusetts law on tenancies by the entirety to hold that, when the Family Court granted Molly all rights to the Property and required Will to transfer his interest in the Property to Molly in the divorce decree, that distribution of rights and the subsequent divorce extinguished the interests of Will's creditors (i.e., the Trust) in the Property.  Cosel, 777 F. Supp. 3d at 24-25.  Second, the court concluded that the Disputed Funds were not spent on "necessaries," a term of art under Chapter 209.  Id. at 25-26. This conclusion meant that Molly was not jointly and severally liable for the purported loan, even assuming that it was valid. Id.; see Mass. Gen. Laws ch. 209, § 1 ("[B]oth spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse . . . .").  The court then granted summary judgment for Molly.

The Trust sought reconsideration and argued that, because the Property had ceased to be Molly's principal residence

- 8 -

when she moved away during the pendency of the divorce, the Wendt Parents had perfected their judgment lien on the Property under Chapter 209 when they recorded the execution at the registry of deeds. The district court rejected this argument. It reasoned that the execution against Will's interest had not been validly completed before the divorce, and it emphasized that the earlier proceedings occurred without notice to Molly or any determination that the Property had ceased to be her principal residence.

On the same day that the district court denied the Trust's motion for reconsideration, it issued a final judgment in Molly's favor declaring that the Trust holds no interest in the Property and that the writ of execution issued in the Default Suit "does not attach any interest in the [P]roperty." The court also dismissed the Trust's counterclaims with prejudice.

The Trust timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II. Standard of Review

We review a district court's grant of summary judgment de novo.[2] Alicea v. Cincinnati Inc., 166 F.4th 245, 253 (1st Cir.

---

[2] Our de novo review extends to the district court's order denying the Trust's motion for reconsideration, which is where the Trust raised its principal residence argument. Though we ordinarily review denials of motions for reconsideration for abuse of discretion, we review de novo whether the principal residence issue precluded summary judgment because the parties' appellate arguments concern "the propriety vel non of summary judgment" rather than "the desirability vel non of reconsideration." Best

2026).  In conducting this review, we construe all disputes of fact and reasonable inferences in favor of the non-moving party.  See id.  We will affirm a grant of summary judgment to the moving party only if, under that reading of the record, we conclude that they are "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where, as here, both parties sought summary judgment, we separately evaluate each motion under this rubric.  See Gibson Found., Inc. v. Norris, 88 F.4th 1, 5-6 (1st Cir. 2023).

### III. Discussion

On appeal, the Trust attacks practically every aspect of the district court's orders.  Based on these perceived errors, the Trust argues that the court's decision should be reversed and that summary judgment should be granted in its favor.  For her part, Molly defends the court's rulings.  She further argues that federal courts are barred from hearing the Trust's counterclaims because of the domestic relations exception.

We address first the issues as they pertain to Molly's claims.  In so doing, we review tenancies by the entirety under Massachusetts law, Chapter 209, the validity of the promissory note with respect to Molly, and Molly's principal residence.  We then turn to the Trust's counterclaims, at which point we address

---

Auto Repair Shop, Inc. v. Universal Ins. Grp., 875 F.3d 733, 737 (1st Cir. 2017) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 67-68 (1st Cir. 2011)).

- 10 -

the domestic relations exception and whether the purported loan was spent on necessaries.

Both parties bring their claims under Massachusetts law, so, as a federal court sitting in diversity, we apply the Commonwealth's substantive law.  Blakesley v. Marcus, 158 F.4th 90, 95 (1st Cir. 2025).  And where Massachusetts law is unclear, we predict how the state's highest court, the Supreme Judicial Court (the "SJC"), would rule.  See id.; Abdisalam v. Strategic Delivery Sols., LLC, 171 F.4th 30, 36 (1st Cir. 2026).

A.   **Molly's Claims**

Molly brought claims for a declaration and an injunction that would prevent the Trust from proceeding with a sheriff's sale of an interest in the Property.  Whether she is entitled to this relief requires resolution of multiple issues.

The first is whether the loan represented by the promissory note is valid as to Molly.  If it is not and instead is the result of a "conspiracy" between Will and his parents "to encumber a marital asset," then it may not be the basis for obtaining a lien on the Property that would dispossess Molly of it.  Feldman v. Feldman, 480 N.E.2d 45, 47-48 (Mass. App. Ct. 1985) (citation modified).  Below, the district court acknowledged that this was a threshold issue but determined that there was a genuine dispute of material fact that prevented it from being resolved on summary judgment.  Cosel, 777 F. Supp. 3d at 21.

Nevertheless, the district court granted Molly summary judgment on other grounds. To do so, it held that even if the loan were valid, Molly and Will's divorce and the Family Court's distribution of the Property to Molly extinguished the Trust's interest in the Property. Cosel, 777 F. Supp. 3d at 25.

Resolving the case in this manner required the district court to predict Massachusetts law in an area that touches on delicate and complex issues related to divorce and tenancies by the entirety. Below, we explain why the district court should have declined to address this unsettled and difficult issue of Massachusetts law while potentially dispositive factual disputes remained live. Based on this consideration, we vacate the order to the extent it predicted Massachusetts law regarding the effect of a divorce on a creditor's interest in property owned by the entirety. We then turn to two additional concerns raised by the Trust. First, whether Molly is precluded from challenging the validity of the loan as it pertains to her because of the judgment entered in the Default Suit; and second, whether the Wendt Parents effected a valid execution on Will's interest in the Property prior to Molly and Will's divorce. We reject the Trust's arguments.

### 1. Creditors' Interests, Divorce, and Tenancies by the Entirety

The district court's determination that the divorce extinguished the Trust's interest in the Property as Will's

creditor primarily implicates Massachusetts law on tenancies by the entirety. A tenancy by the entirety is a property estate "of ancient common law origin." Coraccio v. Lowell Five Cents Sav. Bank, 612 N.E.2d 650, 652 (Mass. 1993); see Shaw v. Hearsey, 5 Mass. 521, 522-23 (1809). At common law, the estate applied only to property co-owned by spouses and reflected the unique property interests that flow from marriage; a tenancy by the entirety was "essentially a joint tenancy modified by the common-law theory of the unity of husband and wife." Bernatavicius v. Bernatavicius, 156 N.E. 685, 686 (Mass. 1927). The estate provided spouses with "concurrent ownership" of the property owned by the entirety. Coraccio, 612 N.E.2d at 652-53. This concurrent ownership, however, was gendered -- a husband, but not a wife, could alienate his interest in the property. Licker v. Gluskin, 164 N.E. 613, 614-15 (Mass. 1929), superseded by statute, Mass. Gen. Laws ch. 209, § 1, as recognized in Coraccio, 612 N.E.2d at 653-54.

At common law, the tenancy endowed the wife with an "indestructible" right of survivorship. Coraccio, 612 N.E.2d at 653. So, even if a husband conveyed his interest, "such an alienation could not defeat the right of the survivor spouse." Id. Practically, this meant that even though "an individual creditor of the husband could levy and sell on execution his interest in the tenancy, [thereby] dispossess[ing] both the husband and wife, the property always remained subject to the

- 13 -

wife's survivorship right, and if the husband died before the wife, the creditor lost all of his interest."  Id.

During a marriage, the estate could only be destroyed by "death, . . . a deed of both parties[,] or a deed of one spouse to the other."  Campagna v. Campagna, 150 N.E.2d 699, 703 (Mass. 1958).  Upon divorce, a tenancy by the entirety dissolved into a tenancy in common.  Bernatavicius, 156 N.E. at 687.

In 1979, the Massachusetts legislature modernized the estate by enacting Massachusetts General Laws, chapter 209, § 1. 1979 Mass. Acts 768 [https://perma.cc/KR4Q-83NC]; see Coraccio, 612 N.E.2d at 652-54.  As is relevant here, Chapter 209 states:

> A husband and wife shall be equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety.
>
> The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.

Mass. Gen. Laws ch. 209, § 1.

Although Chapter 209 equalized the estate with respect to husband and wife, "[t]he statute did not . . . alter the characteristics of the estate itself."  Coraccio, 612 N.E.2d at

- 14 -

654. The SJC thus has interpreted Chapter 209 to permit each individual spouse to convey and encumber his or her own interest in property owned by the entirety, including by mortgaging it. Id. at 654-55. So long as the property remains held by the spouses as tenants by the entirety and is the nondebtor spouse's principal residence, a creditor may attach the debtor spouse's interest but may not seize or execute on it. See Peebles v. Minnis, 521 N.E.2d 1372, 1373 (Mass. 1988); Coraccio, 612 N.E.2d at 653-55 & n.9. Moreover, the estate is not severable or subject to voluntary partition. Coraccio, 612 N.E.2d at 654. Under Chapter 209, each spouse retains a right of survivorship, which means that if the debtor spouse predeceases the nondebtor spouse, then the nondebtor spouse will obtain full ownership of the property, free and clear of any interests belonging to the deceased spouse's creditors. Bakwin v. Mardirosian, 6 N.E. 3d 1078, 1084 (Mass. 2014).

Against this legal backdrop, the district court took on the following question: when a creditor (the Trust, as successor-in-interest to the Wendt Parents) holds a judgment lien on one spouse's (Will's) interest in property held by the entirety (the Property), what happens to the lien when that property is distributed to the nondebtor spouse (Molly) as part of a divorce decree? The court ruled that the creditor's interest is extinguished. Cosel, 777 F. Supp. 3d at 25. Other jurisdictions have decided differently -- one has developed a rule that would

- 15 -

allow a mortgagee, after divorce dissolved a tenancy by the entirety, to foreclose on the interest mortgaged by one spouse, with the purchaser becoming a tenant in common entitled to seek partition, see V.R.W., Inc. v. Klein, 503 N.E.2d 496, 499-501 (N.Y. 1986); another has adopted a rule that would tie the creditor's interest to whether the nondebtor spouse survives the debtor spouse even after the divorce, see Freda v. Com. Tr. Co., 570 A.2d 409, 414-15 (N.J. 1990). So far as we can tell, no other jurisdiction has adopted the district court's rule.[3] That is not to say that the SJC would reject the district court's prediction of Massachusetts law; it does, however, suggest that it is far from certain that the SJC would adopt it.

In the past, where resolution of factual disputes could potentially obviate the need to address a sensitive and complex question of state law, we have held that considerations of "comity and federalism" counsel for federal courts addressing the factual disputes first. Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 251 (1st Cir. 2013). And in the event a district court has skipped ahead to resolve the case based on a prediction of a difficult question of state law, we have vacated the court's

---

[3]    A New Jersey intermediate appellate court did adopt the district court's rule. See Daeschler v. Daeschler, 520 A.2d 777, 778 (N.J. Super. Ct. App. Div. 1986). But the New Jersey Supreme Court later rejected it in favor of one that preserved some of the creditor's interests. See Freda, 570 A.2d at 412-15.

judgment and remanded for resolution of the antecedent factual questions, recommending that the court consider certification if it became necessary to resolve the legal issue. Id. at 255-56.

We think that approach fits under the unusual circumstances presented here. If the district court concludes that the loan is a sham, then that loan cannot be enforced against Molly, including through the judgment lien. Similarly, if the Wendt Parents and Will colluded to use the Default Suit to encumber Will's interest in the Property and frustrate its award to Molly, then the resulting lien could be set aside as against Molly. See Feldman, 480 N.E.2d at 47-48. Were either of these situations the case, then Molly would own the Property free and clear of any encumbrance so derived, and the court would not need to decide the difficult legal question about the effect of the divorce under Massachusetts law. Accordingly, we vacate the court's order insofar as it predicted the effect of Molly and Will's divorce on the Trust's interest in the Property and remand for a determination on the threshold question of the validity of the loan as to Molly.

### 2. The Trust's Responses

The Trust believes that, though favorable to it, vacating the district court's decision on this point does not go far enough. First, it argues that the district court must treat the loan as valid with respect to Molly. The Trust primarily believes this is so because the Default Suit judgment is predicated

on a conclusion that the loan is valid, and it is too late now for Molly to challenge that determination. As a fallback position, the Trust asserts that even if Molly could challenge the validity of the loan in this suit, the record compels a finding that the loan is valid. If the Trust is right on either contention, then remanding for further factual development about the bona fides of the loan would be pointless, and we would have to address the difficult question of Massachusetts law that we just described.

Second, the Trust renews the argument from its motion to reconsider that the Wendt Parents perfected a valid judgment lien on Will's interest in the Property before the Family Court distributed the Property to Molly in the divorce. It argues that the lien was valid because, when it was perfected, the Property was not Molly's principal residence. We reject both arguments.[4]

---

[4] The Trust also argues that Molly should be judicially estopped from making some of her arguments. "[J]udicial estoppel . . . generally prevents a party from assuming inconsistent positions in successive litigation" to obtain an unfair advantage. Keathley v. Buddy Ayers Constr., Inc., 608 U.S.___, 146 S. Ct. 1532, 1536 (2026); see Díaz-Báez v. Alicea-Vasallo, 22 F.4th 11, 21 (1st Cir. 2021).

The Trust asserts that Molly obtained a stay in the Quiet Title Suit pending the conclusion of the divorce action and then successfully opposed the Wendt Parents' intervention in the divorce proceedings in part by agreeing that the divorce decree would not have a "conclusive effect" on the Wendt Parents' interests. This, the Trust continues, prevented the Wendt Parents, the Trust's predecessors-in-interest, from presenting evidence regarding the validity of the alleged loan. The Trust contends that these positions judicially estop Molly from arguing in this

- 18 -

### a.   Validity of the Loan

The Trust contends that Molly cannot contest the validity of the loan in this action because to do so would effectively challenge the judgment in the Default Suit. To challenge that default judgment, it continues, Molly would have had to try to vacate the judgment either by intervening in the Default Suit and filing a timely motion under Massachusetts Rule of Civil Procedure 60(b), or by initiating an "independent action," a term of art under Rule 60(b). The Trust concludes that because Molly did not timely avail herself of either option, she may not obtain the relief in this action that she could have obtained in state court.[5] In response, Molly argues that she

_____

suit that the divorce decree settled that Molly owns the Property "free and clear of the alleged debt owed by Will Wendt."

We do not believe that judicial estoppel applies to Molly's arguments before us. To the extent the Trust seeks to prevent Molly from arguing that the divorce decree has a preclusive effect on these proceedings, we do not see that Molly has made that argument in this Court. And to the extent the Trust seeks to prevent Molly from arguing about the validity of the loan, we do not believe that the judicial estoppel standard has been met, as Molly has consistently claimed that Will is bound by the judgment in the Default Suit, but that the loan should be understood as invalid as to her.

[5]   A party has one year to file a motion under Massachusetts Rule of Civil Procedure 60(b) to vacate a judgment for fraud. Mass. R. Civ. P. 60(b). An independent action premised on fraud similarly has a one-year statute of limitations in most cases. See Sahin v. Sahin, 758 N.E.2d 132, 137 (Mass. 2001). Molly filed this suit over a year after the judgment issued in the Default Suit.

- 19 -

should not be so constrained.  She points out that she was not a party to the Default Suit.  Relatedly, she contends that she does not want to challenge the default judgment insofar as it assigns legal rights between Will and his parents; rather, she seeks only to limit the judgment so that it cannot be applied to force the sale of the Property.  Cf. Feldman, 480 N.E.2d at 47-48 (upholding a decision to prevent a fraudulent mortgage from dispossessing a spouse).  We agree with Molly.

Though the Trust does not expressly invoke preclusion, it essentially argues that Molly is stuck with the judgment in the Default Suit and that Rule 60(b) was her only way to avoid its binding effect.  Because that judgment was rendered in Massachusetts, we look to the Commonwealth's law to determine its preclusive effect with respect to Molly.  See In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007).

Massachusetts Rule of Civil Procedure 60(b) provides mechanisms to "relieve a party or his legal representative from a final judgment, order, or proceeding."  Under the Rule, a party may seek relief from judgment either directly, i.e., in the same suit in which judgment was rendered, or collaterally, through what is known as an "independent action."  See Mass. R. Civ. P. 60(b); Sahin v. Sahin, 758 N.E.2d 132, 137-38 (Mass. 2001); see also Harker v. City of Holyoke, 457 N.E.2d 1115, 1117 n.3 (Mass. 1983) (delineating between direct and collateral attacks).  To interpret

- 20 -

Rule 60(b), courts look to its federal "cognate." Sahin, 758 N.E.2d at 137 n.7.[6]

In effect, both direct and collateral attacks on a judgment under Rule 60(b) are "escape hatch[es]" from the preclusive effect of a judgment. Lundborg v. Phoenix Leasing, Inc., 91 F.3d 265, 270 (1st Cir. 1996); see id. at 270-72 (discussing independent actions). But a judgment typically carries preclusive effect only with respect to the parties to that judgment and those parties' privies. See DeGiacomo v. City of Quincy, 63 N.E.3d 365, 369-71 & n.5 (Mass. 2016). Consistent with that principle, Rule 60(b) is generally only applicable and available to parties and their privies. See 11 Wright & Miller's Federal Practice & Procedure § 2865 & nn.6-7 (3d Ed. 2012).[7]

---

[6]    In federal court, direct attacks on judgments are addressed in Federal Rule of Civil Procedure 60(b), while independent actions are covered in Rule 60(d)(1). Previously, however, independent actions were also addressed in Rule 60(b). See Fed. R. Civ. P. 60(b) advisory committee's note to 2007 amendment.

[7]    In rare circumstances, some courts have permitted litigants who were neither parties nor their privies to intervene and file Rule 60(b) motions when their "interests were directly or strongly affected by the judgment." Bridgeport Music, Inc. v. Smith, 714 F.3d 932, 940 (6th Cir. 2013); see, e.g., id. at 940-41 (collecting federal cases); Butts v. Zoning Bd. of Appeals of Falmouth, 464 N.E.2d 108, 110, 112-13 (Mass. App. Ct. 1984). But none of those cases has stated that nonparties to underlying judgments are required to pursue that path, and the Trust cites no case so holding.

- 21 -

Here, Molly was not a party to the Default Suit, so the only way she would be bound by the resulting judgment is if she had been in privity with a party who was. The Trust, however, does not argue that Molly was in privity with either Will or the Wendt Parents. Because the Trust bears the burden to establish the default judgment's preclusive effect, we proceed with the understanding that Molly is not in privity with a party to the Default Suit. See Sarvis v. Bos. Safe Deposit & Tr. Co., 711 N.E.2d 911, 922 (Mass. App. Ct. 1999) ("As the defendants are the parties asserting both claim and issue preclusion, they bear the burden of proof on the elements.").[8]

Because Molly was neither a party to the Default Suit nor in privity with a party who was, she did not need to avail herself of Rule 60(b) and instead was free to pursue alternative avenues for relief. See In re Lovitt, 757 F.2d 1035, 1039-40 (9th Cir. 1985). Historically, Massachusetts recognized such alternatives and permitted a nonparty to challenge a prior,

---

[8] On appeal, the Trust cites only Matter of Childress, 851 F.2d 926 (7th Cir. 1988), to support its argument that Molly must rely on Rule 60(b). There, the court affirmed an order construing a pleading filed by a third party as a Rule 60(b) motion and held that the plaintiff could seek Rule 60(b) relief because she was in privity with a party to the underlying action. Id. at 927-29. This case is distinguishable because, as we explained, the Trust has not demonstrated that Molly was in privity with any party to the Default Suit. Moreover, Childress says nothing about what avenues of relief exist for nonparties who are not in privity with a party to the suit.

allegedly defective judgment.  For example, in Old Colony Trust Co. v. Porter, the SJC permitted a nonparty to argue that a prior judgment could not affect it because that judgment was issued by a court lacking subject matter jurisdiction, even as the parties to that judgment remained bound by it.  88 N.E.2d 135, 139 (Mass. 1949).  And in Connor v. Morse, the SJC permitted nonparties to obtain equitable relief from the consequences of a judgment "collusive[ly] or fraudulent[ly]" entered in an action "in which they could not be heard."  20 N.E.2d 424, 426-27 (Mass. 1939). While these cases predate the Massachusetts Rules of Civil Procedure, which became effective in 1974, State Bd. of Ret. v. Woodward, 847 N.E.2d 298, 303 (Mass. 2006), the SJC has since cited Old Colony to illustrate that parties bound by a prior judgment generally may not challenge that prior judgment for lack of subject matter jurisdiction through an independent action even though nonparties may still "collateral[ly] attack" it.  Harker, 457 N.E.2d at 1118 (quoting Old Colony, 88 N.E.2d at 139).

Today, the principles embodied in Old Colony and Connor, among cases from other jurisdictions, have been crystallized and elaborated on in the Restatement (Second) of Judgments § 76.  See Restatement (Second) of Judgments § 76 Reporter's Note cmts. (b)-(c) (citing Old Colony and Connor).  Though it does not appear that Massachusetts courts have yet addressed Section 76, they have often relied on the Restatement (Second) of Judgments to

- 23 -

interpret Massachusetts law.[9]  Based on this reliance and the
Restatement's citation to Commonwealth cases, we believe that the
SJC would adopt Section 76 to evaluate whether Molly may sue to
prevent the judgment in the Default Suit from serving as the basis
for the sheriff's sale of the Property.

Section 76 would permit Molly to "obtain a determination
that the judgment is ineffective as to [her] through an action to
restrain enforcement of the judgment."  Restatement (Second) of
Judgments § 76.  To do so, Molly must show that (1) the prior
judgment does not have a preclusive effect on her; (2) "the
existence of the judgment jeopardizes a protectible interest of"
hers; and (3) the nature of her interest "warrants" imminent,
rather than future, relief.[10]  Id.  Molly satisfies the first

---

[9]  See, e.g., <u>Laramie</u> v. <u>Philip Morris USA Inc.</u>, 173 N.E.3d
731, 745-46 (Mass. 2021) (relying on Restatement (Second) of
Judgments § 24); <u>Mullins</u> v. <u>Corcoran</u>, 172 N.E.3d 759, 768-74 (Mass.
2021) (relying on Restatement (Second) of Judgments §§ 27,
28(4)-(5), 53(b), 59); <u>Commonwealth</u> v. <u>Sanchez</u>, 151 N.E.3d 404,
415 (Mass. 2020) (relying on Restatement (Second) of Judgments
§ 28); <u>DeGiacomo</u>, 63 N.E.3d at 370 (relying on Restatement (Second)
of Judgments § 62 cmt. a); <u>Cohen</u> v. <u>Cohen</u>, 25 N.E.3d 840, 848
(Mass. 2015) (relying on Restatement (Second) of Judgments § 12).

[10]  The difference in timing between Section 76 and
Rule 60(b) further reveals that Section 76 is the more appropriate
avenue for relief for nonparties.  Though Rule 60(b) requires that
a motion be filed within a year after judgment is entered (barring
good cause to extend the deadline for an independent action), see
supra note 5, Section 76 is tied to when the nonparty's interest
is imminently implicated.  That makes sense -- the timing of
Rule 60(b) supports its concern with finality by incentivizing
parties to promptly litigate all their issues and claims shortly
after judgment.  Section 76, however, recognizes that a judgment
may not implicate a nonparty's interest for an extended period

- 24 -

element because, as we explained, she is not bound by the judgment in the Default Suit as she was neither a party to the action nor in privity with a party who was.  Molly satisfies the second element because she has a protectible interest in the Property that is called into doubt by the loan, as represented in the Default Suit judgment.  And she satisfies the third element because the Trust claims that it owns a substantial interest in the Property and is actively trying to sell it.

But even when a party satisfies these elements, it still may not be entitled to limit the effect of the prior judgment. Courts must also give due weight to competing interests, particularly the interests of the parties bound by the judgment and the risk that affirmative relief would unnecessarily disturb their legal relationship.  See Restatement (Second) of Judgments § 76 cmt. c.  That is particularly so when a federal court is reviewing a judgment issued by a state court.  In such circumstances, prudential considerations require us to look for "evidence that the state court rendered its final judgment in a discriminatory or otherwise impermissible manner."  Casa Marie, Inc. v. Super. Ct., 988 F.2d 252, 269 (1st Cir. 1993).

---

following the judgment (if ever).  Consistent with that concern, Section 76 ties its availability to when that interest is threatened, staving off unnecessary litigation.

- 25 -

In this case, whether Molly is entitled to relief may well hinge on whether the alleged loan is valid as applied to her, or whether it is a sham intended by the Wendt Parents to dispossess Molly of the Property, force Molly to pay sums not due, or otherwise cause her financial harm. The district court held that it could determine whether the loan was a sham only by resolving factual disputes. Cosel, 777 F. Supp. 3d at 21. A conclusion that the loan is a sham would reveal that the default judgment was rendered in an impermissible manner, thereby justifying relief under Section 76. Cf. Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 28-30, 32 & n.6, 34 (1st Cir. 2010) (affirming a preliminary injunction freezing settlement proceeds where judgment creditors, who were strangers to the litigation producing the settlement, had a colorable claim that the payee's interest in the proceeds rested on a fraudulent conveyance); Feldman, 480 N.E.2d at 47-48 (affirming a decision setting aside a mortgage where the debtor and mortgagee colluded to encumber a marital asset and frustrate its award to the other spouse). The Trust contests the district court's assertion that a factual dispute remains and argues that the record indisputably shows that the loan is valid as to Molly. We agree with the district court.

The Disputed Funds were not memorialized as a loan until just after the Wendt Parents discovered Will and Molly's marital troubles. Indeed, in his deposition, Bill acknowledged that there

were no terms to the loan -- including an interest rate or repayment timeline -- until it was memorialized in the promissory note. And neither Bill nor Will, in their respective depositions, could reasonably explain how Will was going to pay back the entire loan during the repayment period given his limited income. Finally, the Wendt family's legal machinations are eyebrow-raising. They drafted and signed the promissory note and then reduced it to judgment in a suit in which Will did not appear, all with no notice to Molly.

To be sure, Bill, Dalia, and the Wendt family accountant have each testified that the Disputed Funds always were intended to be a loan. But that just means that there is a dispute of fact about the loan's validity. So, to determine whether relief is appropriate under Section 76, the district court must resolve the bona fides of the loan.[11]

### b. Principal Residence

The Trust separately renews its arguments from its motion to reconsider. It points out that, although Chapter 209 generally prevents a debtor spouse's creditors from seizing or

---

[11] Of course, while we deal here with whether Molly can challenge a judgment to which she was not a party, the district court's determination about the bona fides of the loan could have other effects on the litigation. As we have explained, if the loan was a sham designed to interfere with the Family Court's distribution of marital property, the resulting lien against the Property could be set aside. See Feldman, 480 N.E.2d at 47-48.

- 27 -

executing on the debtor spouse's interest in property held by the entirety, the statute makes this protection contingent on the property serving as "the principal residence of the nondebtor spouse." Mass. Gen. Laws ch. 209, § 1. Where the property is not the nondebtor spouse's principal residence, the debtor spouse's interest may be subject to seizure or execution. Id.

The Trust argues that a reasonable factfinder could conclude that when Molly moved from the Property during the pendency of the divorce, it ceased to be her principal residence, "thereby destroying" Will and Molly's "unitary title" in the Property. And because the execution was recorded while, according to the Trust, Molly was no longer occupying the Property as her principal residence, "the Property was susceptible to [the] [j]udgment [l]ien on Will's interest."

At the outset, we are uncertain whether the Trust accurately describes Massachusetts law. When a property is not a nondebtor spouse's principal residence, Chapter 209 permits a creditor to seize and effect an execution on "[t]he interest of a debtor spouse"; it does not say that the estate itself is destroyed. Mass. Gen. Laws ch. 209, § 1; see Coraccio, 612 N.E.2d at 654.

But even setting aside this concern, we agree with the district court that the principal residence exception does not apply here, albeit for different reasons than the court provided.

- 28 -

See Rose v. RTN Fed. Credit Union, 1 F.4th 56, 62 n.3 (1st Cir. 2021) (acknowledging that we may affirm the district court's judgment for any reason supported by the record).

Both parties and the district court rely on Massachusetts General Laws, chapter 188, § 1, to define "principal residence," and so we follow suit. That statute defines the term as "the home where an owner . . . resides or intends to reside as the primary dwelling; provided, however, that no person shall hold concurrent rights in more than [one] principal residence." Mass. Gen. Laws ch. 188, § 1 (emphasis added). Though "elusive concepts" like "intent" are often properly left to be decided at trial, summary judgment may nevertheless be appropriate where the party opposing it "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Vives v. Fajardo, 472 F.3d 19, 21 (1st Cir. 2007) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Here, though Molly was living away from the Property when the execution was recorded, the record reveals that Molly intended to principally reside at the Property. Molly detailed her decision to leave the Property in an affidavit submitted to the Family Court. There, she explained that she fled the Property after Will "suggested that [she] move out" and "berate[d]" her in front of their children. Molly further stated that she felt held "hostage" in the home and feared for her health should she remain.

- 29 -

She concluded this affidavit by stating that though she had "no choice but to leave the marital home for the time being," she still "expect[ed] to move back into the house that was given to [her and Will] by [her] father and which stands next door to the home of [her] parents."

The Trust does not dispute any of these facts. Nor does it attempt to cast them in a light permitting a reasonable inference that Molly did not intend to return to the Property. Instead, it reiterates that Molly lived off the Property and points to hazy testimony indicating that Molly "probably" updated her address with the Registry of Motor Vehicles. But Molly explained why she temporarily left the Property, and the Trust's reference to Molly's probabilistic change in address is too "speculati[ve]" and requires too many "improbable inferences" to create a genuine dispute as to Molly's intent to return. Vives, 472 F.3d at 21 (quoting Benoit, 331 F.3d at 173). We therefore affirm the district court's conclusion that the Property was Molly's principal residence.

*

To briefly sum up our analysis so far, the district court prematurely predicted a difficult and unsettled issue of Massachusetts law to grant Molly summary judgment. We vacate that portion of the decision so that the court can resolve the potentially dispositive factual dispute relating to the validity

of the loan as to Molly.  We also reject the Trust's contentions that there are legal impediments to the court's undertaking of this factual inquiry.

B.    **The Trust's Counterclaims**

We now turn to the Trust's counterclaims.  As a reminder, the Trust seeks declarations (1) that Molly is jointly and severally liable for the promissory note, and (2) that the sheriff's sale can move forward.  Our determination that there remains a dispute of fact over whether the loan is valid as to Molly precludes granting summary judgment for the Trust on either claim.  If the loan is invalid as to Molly, she obviously cannot be held jointly and severally liable for it.  And as we explained earlier, such a finding would similarly prevent a sheriff's sale of an interest in the Property based on the Default Suit judgment. See supra Part III.A.2.a.

Nevertheless, loose ends remain.  The district court concluded that, even assuming the loan was valid with respect to Molly, no reasonable factfinder could conclude that the funds were spent on "necessaries."  Cosel, 777 F. Supp. 3d at 26.  This determination entitled Molly to summary judgment on the Trust's first counterclaim asserting Molly's joint and several liability for the loan, even assuming its validity.  See Mass. Gen. Laws ch. 209, § 1 ("[B]oth spouses shall be liable jointly or severally

for debts incurred on account of necessaries furnished to either spouse or to a member of their family.").

On appeal, the Trust asks us to reverse this determination and find that the alleged loan was spent on necessaries as a matter of law. In the alternative, it asks that we find that there exists a dispute of material fact on that question.[12] Before addressing this argument, however, we must first evaluate Molly's threshold contention that we lack jurisdiction over the counterclaims under the domestic relations exception.

### 1. The Domestic Relations Exception

The domestic relations exception prevents federal courts from hearing suits involving certain familial concerns, even where the court might otherwise be able to exercise jurisdiction. Ankenbrandt v. Richards, 504 U.S. 689, 701-03 (1992). Though the exception purportedly derives from an arcane interpretation of Judiciary Act of 1789, id. at 698-99 (discussing Barber v. Barber, 62 U.S. (21 How.) 582 (1858)), the Supreme Court has more recently described it as a "judicially created doctrine[] stemming in large measure from misty understandings of English legal history," Marshall v. Marshall, 547 U.S. 293, 299 (2006).

---

[12]   The Trust makes no additional challenges regarding its second counterclaim, which is effectively the flipside of Molly's claims. Because a trial is necessary to resolve Molly's claims, it is also necessary to resolve the Trust's second counterclaim.

Courts construe the domestic relations exception "narrow[ly]," so that only matters arising directly from "divorce, alimony, and child custody decrees" fall outside federal courts' jurisdiction. Marshall, 547 U.S. at 307-08 (quoting Ankenbrandt, 504 U.S. at 701, 703-04); see Dunn v. Cometa, 238 F.3d 38, 41 (1st Cir. 2001). We have interpreted the domestic relations exception to cover certain property distributions in a divorce as they may be "inextricable" from alimony arrangements. Irish v. Irish, 842 F.3d 736, 741 (1st Cir. 2016). But courts have "only" applied the doctrine in such cases "when the parties to the action were former spouses." Crain v. Crain, 72 F.4th 269, 277 (8th Cir. 2023) (citing, inter alia, Irish, 842 F.3d at 741-43); see 15A Moore's Federal Practice § 102.91[3][a] & n.30.1 (3d ed. 2026) ("Nor does [the domestic relations exception] usually apply to claims by or against third parties."). That is because suits involving "third parties" generally do not require issuing or modifying "a divorce, alimony, or child custody decree." Matusow v. Trans-Cnty. Title Agency, LLC, 545 F.3d 241, 247 (3d Cir. 2008).

In this case, that final point is crucial. Neither the Trust, nor the beneficiaries of the Trust, nor the Wendt Parents, as predecessors-in-interest to the judgment lien on the Property, were parties to the divorce proceedings. Indeed, the Family Court rejected the Wendt Parents' attempt to intervene in that case and later expressly acknowledged that it did not have the authority to

- 33 -

adjudicate the interests of Will's creditors in the Property. Properly understood, the Trust has brought claims as Will's creditor, seeking to extend liability to Molly or, alternatively, recover the alleged debt through a sheriff's sale. Such remedies would not alter the divorce decree, which adjudicated rights and distributed property between Molly and Will. The domestic relations exception therefore does not bar the Trust's counterclaims.

## 2. Necessaries

That brings us to the final issue on appeal -- whether the district court correctly granted Molly summary judgment on the Trust's first counterclaim asserting Molly's joint and several liability by concluding as a matter of law that the purportedly valid loan was not spent on "necessaries." The term necessaries originated at common law, where it described "articles of utility" suitable to maintain a wife according to her husband's "estate and degree." Raynes v. Bennett, 114 Mass. 424, 428-29 (1874). The concept of necessaries was not limited to "articles of food or clothing required to sustain life." Jordan Marsh Co. v. Cohen, 136 N.E. 350, 351 (Mass. 1922). Rather, depending on the husband's social status, the term could apply to furniture, household goods, id., or even a fur coat, Jordan Marsh Co. v. Hedtler, 130 N.E. 78, 79 (Mass. 1921). Whether an expenditure amounted to a necessary typically involved resolving several factual disputes, including

identifying the items purchased, defining the husband's station in life, and determining whether the items purchased were proportional to the husband's social status and means.  See id.; Cohen, 136 N.E. at 351; Raynes, 114 Mass. at 429; see also Moskow v. Marshall, 171 N.E. 477, 478-79 (Mass. 1930) (applying the necessaries concept to minors and explaining that whether a college education was a necessary depended on the minor's "condition in life" and other "circumstances").

When the Massachusetts legislature enacted Chapter 209, it not only "attempt[ed] to equalize the rights of men and women" who own property as tenants by the entirety, Coraccio, 612 N.E.2d at 653-54, but also gave necessaries a gender-neutral cast.  The statute provides that "both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family."  Mass. Gen. Laws ch. 209, § 1.  But Chapter 209 does not further define necessaries. Nor are there SJC cases after the statute's enactment that interpret the term.

The district court held that Molly and Will's expenditures to renovate the Property were "high end betterments" rather than necessaries.  Cosel, 777 F. Supp. 3d at 26.  The Trust challenges this determination, asserting that there is, at least, a material factual dispute as to whether the purported loan was spent on necessaries.  We agree.

In this case, there are at least three genuine disputes of material fact on the necessaries issue.[13]  First, the record is unclear as to which aspects of the Property's development were paid for using the Disputed Funds.  The Wendt Parents provided Molly and Will the Disputed Funds starting in February 2018.  During the renovation, Molly and Will built a driveway and septic system and made other environmental renovations.  It is not clear when Molly and Will paid for each of the precise renovations.  But multiple payments to a contractor responsible for many of the renovations (including the septic system) occurred after February 2018.  Moreover, Will's debit and credit transactions, many of which appear to have been for construction materials and services related to home and studio renovations, overwhelmingly occurred following February 2018.  Along similar lines, Molly and Will purchased high-end appliances -- including a Viking stove and a Sub-Zero refrigerator -- as part of the renovation, but it is unclear when those purchases were made.

Second, Molly and Will disagree about their social status at the time they made the renovations.  Molly argues that, at the time of the renovations, she was a schoolteacher, Will was an aspiring photographer, and their combined income was less than

_____

[13]  Because there are disputed issues of material fact on the necessaries issue, we reject the Trust's alternative contention that the Disputed Funds were, as a matter of law, spent on necessaries.

- 36 -

$180,000.  Will, by contrast, asserts that he and Molly should be understood to have been "multimillionaire[s]" who received large sums from the Wendt Parents and planned million-dollar renovations to the Property using those funds.[14]  And third, it is unclear how a factfinder would measure Molly and Will's loan-based expenditures against their social standing.

Facing these disputes, a reasonable factfinder could conclude that most of the renovations were paid for after February 2018, using the Disputed Funds; that Molly and Will were properly understood at the time to be heirs to a fortune who had already received millions in gifted funds; and that the renovations were consistent with these means and station in life. Alternatively, a factfinder could determine that Molly and Will had the more modest means and station in life of a schoolteacher and a photographer, albeit with the benefit of a renovated home resulting from a one-time gift from wealthy relatives.

Given that there remain genuine disputes of material fact regarding whether all or part of the purported loan was spent on necessaries, we hold that the district court wrongly granted Molly summary judgment on the Trust's first counterclaim based on

---

[14]    The parties also dispute how a couple's income should be measured when determining whether certain expenditures are necessaries.  The Trust argues that a couple's income should be measured jointly and Molly argues that the only relevant income is that of the nondebtor spouse.  We do not express a view on this issue.

its necessaries conclusion. Moreover, we note it is conceivable that a finding that the loan was valid as to Molly and spent on necessaries could affect whether the Property may be subject to a sheriff's sale. But we express no opinion on this question. Should the necessaries issue recur later in the proceedings, and once further factual determinations have been made, it may be appropriate to certify legal questions relevant to the issue of whether Molly and Will's expenditures were necessaries under Chapter 209 and what effect that finding might have on the Trust's ability to pursue a sheriff's sale.

### C. Summary and Next Steps

This opinion covers many disparate areas of law. Accordingly, we summarize our holdings.

First, we hold that the district court prematurely resolved an unsettled and complicated question of Massachusetts law regarding the interaction between a creditor's interest in a property, divorce, and a tenancy by the entirety. We therefore vacate that portion of the summary judgment order and remand for factual findings as to whether the purported loan is valid with respect to Molly.

Second, we hold that neither Rule 60(b) nor related preclusion considerations prevent Molly from challenging the loan insofar as it affects her interests. Relatedly, we conclude that

there is a genuine dispute of material fact as to whether the loan is valid with respect to Molly.

Third, we affirm on alternative grounds the district court's determination that the Wendt Parents did not validly complete an execution against Will's interest in the Property prior to the divorce.

Fourth, we hold the domestic relations exception does not prevent the district court from adjudicating the Trust's counterclaims.

And finally, we hold that there are disputes of material fact as to whether the purported loan (assuming its validity as to Molly) was spent on necessaries.

On remand, the district court should conduct further proceedings to determine whether the loan is valid with respect to Molly and (if required) resolve the factual disputes related to the necessaries issue. If the loan is invalid as to Molly, then the case is over, and Molly is entitled to judgment on all claims and counterclaims. If, however, the loan is valid as to Molly, then the district court should conduct further proceedings to determine whether all or part of the loan was spent on necessaries, resolving or certifying to the SJC any unsettled legal questions that must be answered to make that determination. Only if the necessaries issue does not resolve the Trust's asserted interest in the Property should the court decide, or certify to the SJC,

the legal question concerning the effect of Will and Molly's divorce on that interest.

## IV. Conclusion

For the foregoing reasons, we **affirm** the district court's order in part, **reverse** it in part, and **vacate** it in part. We **remand** the case for further proceedings consistent with this opinion.